**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

| | |
|---|---|
| LUCY PINDER and ARABELLA DRUMMOND, | |
| Plaintiffs, | Civil Action No. 0:18-cv-62624 |
| - against - | |
| STAN, INC. d/b/a THE PLAYHOUSE d/b/a THE PLAYHOUSE GENTLEMAN'S CLUB, | **COMPLAINT**<br>(Jury Trial Demanded) |
| Defendant. | |

## COMPLAINT

COME NOW Plaintiffs LUCY PINDER ("Pinder") and ARABELLA DRUMMOND ("Drummond") (collectively, "Plaintiffs" or "Models"), by and through undersigned counsel, and for their Complaint against Defendant STAN, INC. doing business as THE PLAYHOUSE also doing business as THE PLAYHOUSE GEENTLEMAN'S CLUB (hereinafter, "Defendant" or "Playhouse") state as follows:

## INTRODUCTION

1.     Defendant has pirated the images, likeness and/or identity of each Plaintiff Model for purely self-serving commercial purposes – to advertise, promote and market Defendant's own business interests on social media accounts owned, operated, hosted, or controlled by Defendant.

2.     At all times relevant to this action, Plaintiffs were and are the exclusive owners of all rights, title, and interest to their images, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

3.     Defendant is an unapologetic, chronic and habitual infringer.

4.     Defendant did not negotiate for or purchase the images.

5.     Defendant did not seek or obtain consent or authority to use Plaintiffs' images for any purpose.

6.     Plaintiffs did not agree, nor would Plaintiffs ever agree, to Defendant's use of their images, likeness and/or identity.

7.     Had Plaintiffs been afforded the opportunity to consider whether to consent and release rights as to the use of their images, Plaintiffs would have promptly and unequivocally declined.

8.     Defendant's conduct is therefore misleading and deceptive by falsely representing that Plaintiffs are somehow affiliated with Defendant, have contracted to perform at and/or participate in events at Defendant's strip club, have been hired to promote, advertise, market or endorse the events and other activities offered at Defendant's strip club, and/or that Plaintiffs have attended or will attend each event and have participated in or intend to participate in the activities advertised.

9.     Defendant's conduct is also injurious to the Plaintiffs.

10.    Defendant circumvented the typical arms-length negotiation process entirely and pirated the subject images. In doing so, **Defendant has utterly deprived Plaintiffs the right and ability to say "no."**

11.    Defendant has prevented Plaintiffs from engaging in arms-length negotiations regarding the terms and conditions of use of Plaintiffs' images, including the term of any release, remuneration per use, or the ability to decline the business opportunity entirely. In short, Defendant deprived Plaintiffs of the ability to protect their image, brand

and reputation.

12.     In the end, Defendant gained an economic windfall by using the images of professional and successful models for Defendant's own commercial purposes, luring and enticing patrons worldwide to view the images and visit Defendant's strip club, without having to compensate Plaintiffs a single penny for such usage. Plaintiffs, however, sustained injury to their images, brand and marketability by shear affiliation with Defendant's strip club.

13.     Having operated a business in the adult entertainment and striptease industry, Defendant is well aware of the standard negotiation process over terms of use, conditions of release, licensing issues, and other contractual incidences related to use and exploitation of images for Defendant's commercial benefit.

**PARTIES**

**A.  Plaintiffs**

14.     Given the multitude of violations harming both models, and the similarity of misconduct from Defendant harming the models, in the interest of judicial economy, Plaintiffs, through counsel, respectfully consolidate all actionable violations *presently known* into this single collective action on behalf of the following models:

15.     PLAINTIFF Pinder is, and at all times relevant to this action was, a professional model and resident of England, United Kingdom.

16.     PLAINTIFF Drummond is, and at all times relevant to this action was, a professional model and resident of England, United Kingdom.

**B.  Defendant**

17.     Based on publicly available records, and further upon information and

belief, DEFENDANT Stan, Inc., doing business as The Playhouse also doing business as The Playhouse Gentleman's Club, is a corporation organized and existing under the laws of the State of Florida with a principal place of business at 5775 W Hallandale Beach Blvd, West Park, FL 33023.

18.    DEFENDANT Stan, Inc., operates a strip club, named The Playhouse and also The Playhouse Gentleman's Club.

19.    DEFENDANT holds, and at all times relevant, has held itself out as a strip club that engages in the business of entertaining its patrons with nude dancing and alcohol.

20.    DEFENDANT operates a Facebook and an Instagram page through which it advertises its business, events, and parties. For some of these events, images of one or more of the Models were used to market and promote the events.

## JURISDICTION AND VENUE

21.    This Court has original federal question jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 as Plaintiffs have stated a claim under the Lanham Act, 28 U.S.C. § 1125(a)(1). This Court has supplemental jurisdiction over the Florida state law claims alleged herein pursuant to 28 U.S.C. § 1367.

22.    The Court has personal jurisdiction over Defendant based on its contact with the State of Florida, including but not limited to Defendant's registration to conduct business in Florida, its physical locations and principal places of business in Florida, and upon information and belief, Defendant committed, facilitated, assisted, encouraged or conspired to commit the actions giving rise to the harm and damages alleged herein in the State of Florida.

23.    Venue is proper in the United States District Court for the Southern District

of Florida pursuant to 28 U.S.C. §§ 1391(a) and (b) because Playhouse has its principal places of business in Broward County, Florida and its acts giving rise to the claims set forth herein occurred or originated in Broward County, which is in the Southern District of Florida.

## FACTUAL BACKGROUND

**A.** **Standard and Customary Business Practices in the Modeling and Acting Industry Require Arms-Length Negotiations over the Terms and Conditions of Usage and Remuneration for any Modeling Image**

24.     In the modeling and acting industry, reputation is critical.  Protection of a model or actor's reputation is therefore of paramount importance.

25.     Plaintiffs are professional models who earn a living by promoting their images and likeness to select clients, commercial brands, media and entertainment outlets, as well as relying on their reputation and own brand for modeling, acting, hosting, and other opportunities.

26.     Plaintiffs' careers in modeling, acting, and private enterprise have value stemming from the goodwill and reputation that they have built, all of which is critical to establishing a brand, being selected for jobs and maximizing earnings.

27.     Plaintiffs have worked to establish themselves as reliable, reputable and professional.

28.     Plaintiffs must necessarily be vigilant in protecting their "brand" from harm, taint, or other diminution.

29.     Any improper or unauthorized use of an image, likeness and/or identity could substantially injure the career and career opportunities of Plaintiffs.

30.     In the modeling and acting industry, models such as Plaintiffs typically do

not have a single employer, but rather work as independent contractors for different agents or entities.

31.     Plaintiffs are responsible professionals in the ordinary course. Plaintiffs seeks to control the use and dissemination of their images and, thus, actively participate in vetting and selecting modeling, acting, brand spokesperson, or hosting engagements.

32.     Plaintiffs' vetting and selection of professional engagements involves a multi-tiered assessment, such as, but not limited to:

   a.   determining whether the individual or entity seeking a license and release of Plaintiffs' images, likeness and/or identity is reputable, has reputable products or services, and, through affiliation therewith, would either enhance or harm Plaintiffs' stature or reputation;

   b.   this reputational information is used in negotiating compensation which typically turns on the work Plaintiffs are hired to do, the time involved, travel and how their images are going to be used – known as "usage" (among other variables);

   c.   to protect their reputation and livelihood, Plaintiffs and/or their agents carefully and expressly define the terms and conditions of use;

   d.   the entire negotiated deal is reduced to and memorialized in an integrated, written agreement of limited duration (typically 1-3 years) which defines the parties' relationship. The terms and conditions of the agreement typically, unless otherwise expressly delineated, bind and are applicable to only the parties to that agreement.

33.     Endorsing, promoting, advertising or marketing the "wrong" product,

service or corporate venture, or working in or being affiliated with a disreputable industry can severely impact Plaintiffs' careers by limiting or foreclosing future modeling or brand endorsement opportunities. Conversely, association with high-end companies, products, or magazines can enhance and amplify Plaintiffs' earning potential and career opportunities by making Plaintiffs more sought after and desirable.

**B. Defendant has Misappropriated Plaintiffs' Images, Likeness and/or Identity Without Authority, for Self-Serving Commercial Gain and Without Offering or Paying Compensation to Plaintiffs**

34.     As set forth below, Plaintiffs' images, likeness and/or identity have been misappropriated by or at the direction of Defendant.  Defendant's conduct creates the false and misleading appearance and impression that Plaintiffs either work for Defendant, have appeared and participated or will appear and participate in activities or events at Defendant's strip club, and/or have agreed and consented to advertise, promote, market or endorse Defendant's strip club or one or more Defendant's events or activities.

### *Plaintiff Lucy Pinder*

35.     PLAINTIFF Pinder is, and at all times relevant to this lawsuit was, a successful glamour model, actress, host and a businesswoman. Pinder has been featured in publications such as *FHM* and *The Daily Star* and was one of *FHM*'s "100 Sexiest Women in the Word" from 2005 through 2007. Pinder has collaborated with major brands such as Unilever, Camelot, and others on large national and international advertising campaigns. Pinder is also an established actress with television and film credits including, *I'm Famous and Frightened*, *Socc AM, Weakest Link, Nuts TV, MTV's TMF, Hotel Babylon,* and *Team and Bo!*. Pinder was also a contestant on *Celebrity Big Brother* and starred in *The Seventeenth Kind, Age of Kill*, and *Warrior Savitri*. Pinder has also worked with *Help for*

*Heroes*, appearing in the *Hot Shots* fund raising calendar, supported male cancer awareness campaigns, took part in the MCAC London Strut awareness initiative, and visited American troops in Afghanistan. Pinder has over 1,424,000 Facebook followers, 503,000 Twitter followers, and 151,000 Instagram followers.

36.     In all instances of commercial marketing and promotion of her image, likeness and/or identity by third parties, Pinder negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

37.     DEFENDANT Playhouse used a stolen image of PLAINTIFF Pinder to entice the public to visit its strip club. On July 29, 2015, Playhouse uploaded Pinders's image to its Facebook page to advertise Playhouse's "Pre 4th of July Bash" event and to invite the public to visit its strip club. The image was also used to advertise Playhouse's alcohol specials, its Facebook page as well as its Twitter page.

38.     Pinder's image was used without her consent to intentionally give the impression that Pinder is either a stripper working at the strip club or that she endorses the strip club. *See* image of PLAINTIFF Pinder attached hereto as **Exhibit A** which is incorporated herein by this reference.

39.     Pinder has never been employed by Defendant or contracted with Defendant to participate in events at Defendant's strip club.

40.     Pinder has never been hired by Defendant or contracted with Defendant to advertise, promote, market or endorse Defendant's business or any of Defendant's events.

41.     Defendant never sought permission or authority to use Pinder's image, likeness and/or identity to advertise, promote, market or endorse Defendant's business or

any of Defendant's events.

42.     Pinder never gave permission, or assigned, licensed or otherwise consented to Defendant using her image, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events.

43.     At all times relevant to this action, Pinder was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant.

44.     Defendant neither offered nor paid any remuneration to Pinder for the unauthorized use of her image, likeness and/or identity.

45.     Defendant's use of Pinder's image, likeness and/or identity in connection with Defendant's strip club impugns Pinder's character, embarrasses her, and suggests – falsely – her support for and participation in the adult entertainment and striptease industry.

46.     Upon information and belief, Defendant's improper use of the image described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Pinder's image in their market activities and business. In doing so, Defendant has further damaged Pinder.

### *Plaintiff Arabella Drummond*

47.     Plaintiff Drummon is, and all times relevant to this matter was, a model. Drummond has appeared in numerous magazines such as, *Loaded*, *Nuts Magazine*, *Max Power*, *FastCar*, *Tattoo Life*, *Monkey Magazine*, and *Rebel* among others. Drummond has also appeared in television shows, such as Iron Fist, Toxico, and Coffin Case and on such networks as Playboy TV, MTV and Discovery Channel. Drummond has over 106,000 Instagram followers, almost 64,000 Twitter followers and over 117,000 Facebook

followers.

48.     In all instances of commercial marketing and promotion of her image, likeness, or identity by third parties, Drummond negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation

49.     DEFENDANT Playhouse used a stolen image of Plaintiff Drummond to entice the public to visit its strip club. On February 4, 2015, Playhouse posted Drummond's image on its Facebook page as part of an advertisement for Playhouse, insinuating that Drummond is a stripper working at Playhouse. Drummond appears as the model with blond hair. The image was used to promote Playhouse's "Wicked Wednesdays" events. The image was also used to advertise $5 well drinks, $5 table dances, and $5 selected menu items. The image also promoted DJ Seizure, "#wickedwednesdays", and Playhouse's Facebook and Twitter pages. On October 15, 2015, the same advertisement was re-published on Defendant employee's Instagram page to also promote Playhouse's "Wicked Wednesdays" events using Drummond's image. The image was used without the consent of Drummond to intentionally give the impression that Drummond is either a stripper working at the strip club or that she endorses Playhouse. *See* image of PLAINTIFF Drummond attached hereto as **Exhibit B** which is incorporated herein by this reference.

50.     Drummond has never been employed by Defendant or contracted with Defendant to participate in events at Defendant's strip club.

51.     Drummond has never been hired by Defendant or contracted with Defendant to advertise, promote, market or endorse Defendant's business or any of Defendant's events.

52.     Defendant never sought permission or authority to use Drummond's image, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events.

53.     Drummond never gave permission, or assigned, licensed or otherwise consented to Defendant using her image, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events.

54.     At all times relevant to this action, Drummond was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant.

55.     Defendant neither offered nor paid any remuneration to Drummond for the unauthorized use of her image, likeness and/or identity.

56.     Defendant's use of Drummond's image, likeness and/or identity in connection with Defendant's strip club impugns Drummond's character, embarrasses her, and suggests – falsely – her support for and participation in the adult entertainment and striptease industry.

## CAUSES OF ACTION

### *Plaintiff Lucy Pinder's Causes of Action*

### PINDER COUNT I
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)**

57.     Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Pinder from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ." 15 U.S.C. §1125(a)(1)(B).

58.     At all times relevant to this action, Pinder was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

59.     Defendant used Pinder's image, likeness and/or identity as described herein without authority to create the perception that Pinder worked at or was otherwise affiliated with Defendant's strip club, endorsed Defendant's business and activities, and/or consented to or authorized Defendant to use her image to advertise, promote, and market Defendant's business and/or Defendant's events and activities.

60.     Defendant's use of Pinder's image, likeness and/or identity to advertise, promote and market Defendant's business and/or Defendant's events and activities as described in this Complaint was false and misleading.

61.     Defendant's unauthorized use of Pinder's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Pinder worked at or was otherwise affiliated with Defendant, endorsed Defendant's business, or Defendant's events or activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's business or Defendant's events and activities and/or that Pinder would participate in or appear at the specific events promoted in the advertisement.

62.     Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendant, as to the general quality of attendees and participants of Defendant's strip club and in its events, as well as specifically whether Pinder worked at or was otherwise affiliated with Defendant, endorsed Defendant's business or Defendant's events or activities, or consented to or

authorized Defendant's usage of her image to advertise, promote, and market Defendant's business or Defendant's events and activities.

63.     Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Pinder worked at or was otherwise affiliated with Defendant, endorsed Defendant's business or Defendant's events and activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's business or Defendant's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendant, visit Defendant's strip club, and participate in events at Defendant's strip club and had a material effect and impact on the decision of members and prospective members and participants to join Defendant, visit Defendant's strip club and take part in the events at Defendant's strip club.

64.     Defendant's advertisements, promotions and marketing of Defendant's strip club and events occur in and are targeted to interstate commerce.  Specifically, Defendant promotes its business and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally uses the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Defendant's events.

65.     Defendant's unauthorized use of Pinder's image, likeness and/or identity as described herein was designed to benefit Defendant's business interests by, among other things, promoting Defendant's strip club and activities and attracting clientele to Defendant's strip club.

66.     Defendant knew or should have known that its unauthorized use of Pinder's

image, likeness and/or identity would cause consumer confusion as described in this Complaint.

67.     Defendant's unauthorized use of Pinder's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

68.     As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

69.     Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of its conduct, deprived Pinder of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Pinder.

70.     The method and manner in which Defendant used the image of Pinder further evinces that Defendant was aware of or consciously disregarded the fact that Pinder did not consent to Defendant's use of the image to advertise Defendant's business.

71.     Defendant has caused irreparable harm to Pinder, her reputation and brand by attributing to Pinder the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

72.     Defendant's unauthorized use of Pinder's image, likeness and/or identity directly and proximately caused and continue to cause damage to Pinder in an amount to be determined at trial.

**WHEREFORE**, Pinder respectfully requests that the Court issue a judgment against Defendant and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment

interest, and/or such further relief that is just and proper.

### PINDER COUNT II
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)**

73.     Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant and protects Pinder from the conduct described herein.

74.     Defendant used Pinder's image to create the false impression with the public that Pinder either worked at Defendant's strip club, or endorsed Defendant's business. This was done to promote and attract clientele to Defendant's strip club, and thereby generate revenue for Defendant. Thus, this was done in furtherance of Defendant's commercial benefit.

75.     Pinder is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Pinder's images in magazines and online.

76.     Both Pinder and Defendant's strip club compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group of men.

77.     As such, an unauthorized use of Pinder's image to promote a strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Pinder.

78.     Defendant's use of Pinder's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Pinder's fans and present and prospective clients into believing that Defendant's advertisements are endorsed by Pinder, or sponsored, approved or associated with Pinder.

79.     Despite the fact that Defendant was at all times aware that Pinder neither

worked at, nor endorsed its strip club, nevertheless, it used Pinder's image to mislead potential customers as to Pinder's employment at and/or affiliation with Defendant.

80.     Defendant knew that its use of Pinder's image would cause consumer confusion as to Pinder's sponsorship and/or employment at Defendant's strip club.

81.     Upon information and belief, Defendant's use of Pinder's image did in fact cause consumer confusion as to Pinder's employment at and/or endorsement of Defendant's business, and the goods and services provided by Defendant.

82.     As a direct and proximate result of Defendant's actions, Pinder has no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisement depicting Pinder's image, likeness and/or identity, or how Pinder's image, likeness and/or identity is being depicted by Defendant.

83.     Further, any failure, neglect or default by Defendant will reflect adversely on Pinder as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Pinder to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Pinder.

84.     Due to Defendant's unauthorized use of Pinder's image, Pinder has been damaged in an amount to be determined at trial.

**WHEREFORE**, Pinder respectfully requests that the Court enter a judgment against Defendant and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment

interest, and/or such further relief that is just and proper.

## PINDER COUNT III
### (Violation of Fla. Stat. § 540.08: Right of Publicity;
### Unauthorized Misappropriation of Name/Likeness)

85.     Pinder has a statutory right of publicity under Section 540.08, Florida Statutes.

86.     Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of any natural person without the express written or oral consent to such use."

87.     Despite the clear language of Section 540.08, Defendant published Pinder's image, likeness and/or identity on a social media outlet, among others, to promote, advertise and market Defendant's strip club and/or Defendant's events and activities.

88.     At all times relevant to this action, Pinder was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

89.     Defendant never sought permission or authority to use Pinder's image, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events or activities.

90.     Pinder never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events or activities.

91.     Defendant intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Pinder's image, likeness and/or

identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

92.     Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of its conduct, deprived Pinder of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Pinder.

93.     At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Pinder's rights.

94.     Alternatively, Defendant acted negligently towards Pinder in using and disseminating, without authority, her image, likeness and/or identity on a social media outlet to promote, advertise and market Defendant's strip club and/or Defendant's events and activities.

95.     Defendant has caused irreparable harm to Pinder, her reputation and brand by attributing to Pinder the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

96.     Defendant has also damaged Pinder as a direct and proximate result of its unauthorized use of Pinder's image, likeness and/or identity without compensating Pinder. Defendant's conduct has been despicable and taken in conscious disregard of Pinder's rights.

**WHEREFORE**, Pinder respectfully requests that the Court issue a judgment against Defendant for all remedies available under Fla. Stat. §540.08, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just

and proper by this Court.

## PINDER COUNT IV
### (Violation of Common Law Right of Publicity;
### Unauthorized Misappropriation of Name or Likeness)

97.     Pinder has a common law right of publicity.

98.     Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of Pinder without express written or oral consent to such use.

99.     At all times relevant to this action, Pinder was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

100.    Defendant published, printed, displayed and/or publicly used Pinder's image, likeness and/or identity on its social media outlet, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing of Defendant and Defendant's events and activities.

101.    Defendant took these actions without Pinder's permission, consent or authority.  In fact, Defendant never sought permission nor authority to use Pinder's image, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events or activities.

102.    Pinder never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events or activities.

103.    Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Pinder's image, likeness and/or

identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

104.    Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of its conduct, deprived Pinder of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Pinder.

105.    At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Pinder's rights.

106.    Alternatively, Defendant acted negligently towards Pinder in using and disseminating, without authority, her image, likeness and/or identity on Defendant's social media outlet to promote, advertise and market Defendant's strip club and Defendant's events and activities.

107.    Defendant has caused irreparable harm to Pinder, her reputation and brand by attributing to Pinder the adult entertainment and striptease lifestyle and activities at Defendant's strip club.

108.    Defendant has also damaged Pinder as a direct and proximate result of its unauthorized use of Pinder's image, likeness and/or identity without compensating Pinder.

**WHEREFORE**, Pinder respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## PINDER COUNT V
### (Conversion)

109.   Pinder is, and all at relevant times was, the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

110.   Pinder has, and at all times relevant herein had, an intangible property interest in her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

111.   By its acts and conduct alleged above, Defendant has converted Pinder's property rights, including without limitation, Pinder's image, likeness and/or identity for Defendant's use and wrongful disposition for financial gain.

112.   Pinder is informed and believes and on such information alleges that Defendant has refused to return Pinder's property to her or pay for the deprivation of Pinder's property.

113.   As a result, Pinder has suffered compensatory and exemplary damages to be determined according to proof at trial; but Pinder alleges that the same are within the jurisdiction of the Court.

114.   Further, Pinder is informed and believes and thereon alleges that in engaging in the conduct described above, Defendant acted with oppression and/or malice. Defendant's conduct has been despicable and taken in conscious disregard of Pinder's rights.

**WHEREFORE**, Pinder respectfully requests this Court to issue a judgment against Defendant and for all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, and restitution of Defendant's

unlawful proceeds, including Defendant's profits, and/or other relief deemed just and proper.

## <u>PINDER COUNT VI</u>
### (Unjust Enrichment)

115.    Pinder has conferred a benefit upon Defendant by virtue of Defendant's usage of her image without compensation.

116.    At all times relevant to this action, Pinder was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

117.    Defendant was aware that Pinder's image, likeness and/or identity were valuable.

118.    Defendant was aware of the resulting benefit from usage of Pinder's image, likeness and/or identity.

119.    Defendant has retained profits and other benefits conferred upon it by using Pinder's image, likeness and/or identity to promote and advertise Defendant's business and/or Defendant's events and activities.

120.    It would be inequitable for Defendant to retain the benefits conferred upon it by using Pinder's image, likeness and/or identity without paying fair value for the image.

**WHEREFORE**, Pinder respectfully requests that the Court issue a judgment against Defendant for damages, including but not limited to actual damages, costs, interest, imposition of a constructive trust, restitution of unlawful proceeds, including Defendant's gross profits and such other and further relief in law or equity as this Court deems just and proper.

*Plaintiff Arabella Drummond's Causes of Action*

**DRUMMOND COUNT I**
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)**

121.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Drummond from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ." 15 U.S.C. §1125(a)(1)(B).

122.    At all times relevant to this action, Drummond was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

123.    Defendant used Drummond's image, likeness and/or identity as described herein without authority to create the perception that Drummond worked at or was otherwise affiliated with Defendant's strip club, endorsed Defendant's business and activities, and/or consented to or authorized Defendant to use her image to advertise, promote, and market Defendant's business and/or Defendant's events and activities.

124.    Defendant's use of Drummond's image, likeness and/or identity to advertise, promote and market Defendant's business and/or Defendant's events and activities as described in this Complaint was false and misleading.

125.    Defendant's unauthorized use of Drummond's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Drummond worked at or was otherwise affiliated with Defendant, endorsed Defendant's business, or Defendant's events or activities, or

consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's business or Defendant's events and activities and/or that Drummond would participate in or appear at the specific events promoted in the advertisement.

126.   Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendant, as to the general quality of attendees and participants of Defendant's strip club and in its events, as well as specifically whether Drummond worked at or was otherwise affiliated with Defendant, endorsed Defendant's business or Defendant's events or activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's business or Defendant's events and activities.

127.   Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Drummond worked at or was otherwise affiliated with Defendant, endorsed Defendant's business or Defendant's events and activities, or consented to or authorized Defendant's usage of her image to advertise, promote, and market Defendant's business or Defendant's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendant, visit Defendant's strip club, and participate in events at Defendant's strip club and had a material effect and impact on the decision of members and prospective members and participants to join Defendant, visit Defendant's strip club and take part in the events at Defendant's strip club.

128.   Defendant's advertisements, promotions and marketing of Defendant's strip club and events occur in and are targeted to interstate commerce.  Specifically, Defendant promotes its business and events through interstate promotions and campaigns to target

persons from different states throughout the United States. Defendant principally uses the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Defendant's events.

129.    Defendant's unauthorized use of Drummond's image, likeness and/or identity as described herein was designed to benefit Defendant's business interests by, among other things, promoting Defendant's strip club and activities and attracting clientele to Defendant's strip club.

130.    Defendant knew or should have known that its unauthorized use of Drummond's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

131.    Defendant's unauthorized use of Drummond's image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

132.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

133.    Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of its conduct, deprived Drummond of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Drummond.

134.    The method and manner in which Defendant used the image of Drummond further evinces that Defendant was aware of or consciously disregarded the fact that Drummond did not consent to Defendant's use of the image to advertise Defendant's business.

135.    Defendant has caused irreparable harm to Drummond, her reputation and

brand by attributing to Drummond the adult entertainment lifestyle and activities at Defendant's strip club.

136.    Defendant's unauthorized use of Drummond's image, likeness and/or identity directly and proximately caused and continue to cause damage to Drummond in an amount to be determined at trial.

**WHEREFORE**, Drummond respectfully requests that the Court issue a judgment against Defendant and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## <u>DRUMMOND COUNT II</u>
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Endorsement)**

137.    Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant and protects Drummond from the conduct described herein.

138.    Defendant used Drummond's image to create the false impression with the public that Drummond either worked at Defendant's strip club, or endorsed Defendant's business. This was done to promote and attract clientele to Defendant's strip club, and thereby generate revenue for Defendant. Thus, this was done in furtherance of Defendant's commercial benefit.

139.    Drummond is in the business of commercializing her identity and selling her images to reputable brands and companies for profit. Defendant's customers are the exact demographic that views Drummond's images in magazines and online.

140.    Both Drummond and Defendant's strip club compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie

for the same dollars from the same demographic consumer group of men.

141.     As such, an unauthorized use of Drummond's image to promote a strip club created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Drummond.

142.     Defendant's use of Drummond's image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which has deceived Drummond's fans and present and prospective clients into believing that Defendant's advertisements are endorsed by Drummond, or sponsored, approved or associated with Drummond.

143.     Despite the fact that Defendant was at all times aware that Drummond neither worked at, nor endorsed its strip club, nevertheless, it used Drummond's image to mislead potential customers as to Drummond's employment at and/or affiliation with Defendant.

144.     Defendant knew that its use of Drummond's image would cause consumer confusion as to Drummond's sponsorship and/or employment at Defendant's strip club.

145.     Upon information and belief, Defendant's use of Drummond's image did in fact cause consumer confusion as to Drummond's employment at and/or endorsement of Defendant's business, and the goods and services provided by Defendant.

146.     As a direct and proximate result of Defendant's actions, Drummond has no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisement depicting Drummond's image, likeness and/or identity, or how Drummond's image, likeness and/or identity is being depicted by Defendant.

147.    Further, any failure, neglect or default by Defendant will reflect adversely on Drummond as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Drummond to continue to protect her reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote her personal modeling services to legitimate mainstream media, all to the irreparable harm of Drummond.

148.    Due to Defendant's unauthorized use of Drummond's image, Drummond has been damaged in an amount to be determined at trial.

**WHEREFORE**, Drummond respectfully requests that the Court enter a judgment against Defendant and grant actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

<u>**DRUMMOND COUNT III**</u>
**(Violation of Fla. Stat. § 540.08: Right of Publicity;**
**Unauthorized Misappropriation of Name/Likeness)**

149.    Drummond has a statutory right of publicity under Section 540.08, Florida Statutes.

150.    Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of any natural person without the express written or oral consent to such use."

151.    Despite the clear language of Section 540.08, Defendant published Drummond's image, likeness and/or identity on a social media outlet, among others, to

promote, advertise and market Defendant's strip club and/or Defendant's events and activities.

152.   At all times relevant to this action, Drummond was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

153.   Defendant never sought permission or authority to use Drummond's image, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events or activities.

154.   Drummond never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events or activities.

155.   Defendant intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Drummond's image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

156.   Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of its conduct, deprived Drummond of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Drummond.

157.   At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Drummond's rights.

158.   Alternatively, Defendant acted negligently towards Drummond in using and disseminating, without authority, her image, likeness and/or identity on a social media

outlet to promote, advertise and market Defendant's strip club and/or Defendant's events and activities.

159.    Defendant has caused irreparable harm to Drummond, her reputation and brand by attributing to Drummond the adult entertainment lifestyle and activities at Defendant's strip club.

160.    Defendant has also damaged Drummond as a direct and proximate result of its unauthorized use of Drummond's image, likeness and/or identity without compensating Drummond. Defendant's conduct has been despicable and taken in conscious disregard of Drummond's rights.

**WHEREFORE**, Drummond respectfully requests that the Court issue a judgment against Defendant for all remedies available under Fla. Stat. §540.08, including but not limited to, both actual loss and damages, costs, interest, royalties, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## DRUMMOND COUNT IV
### (Violation of Common Law Right of Publicity; Unauthorized Misappropriation of Name or Likeness)

161.    Drummond has a common law right of publicity.

162.    Defendant may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, image, or other likeness of Drummond without express written or oral consent to such use.

163.    At all times relevant to this action, Drummond was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

164.    Defendant published, printed, displayed and/or publicly used Drummond's image, likeness and/or identity on its social media outlet, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing of Defendant and Defendant's events and activities.

165.    Defendant took these actions without Drummond's permission, consent or authority.  In fact, Defendant never sought permission nor authority to use Drummond's image, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events or activities.

166.    Drummond never consented to, permitted, assigned, licensed, or otherwise agreed to Defendant's use of her image, likeness and/or identity to advertise, promote, market or endorse Defendant's business or any of Defendant's events or activities.

167.    Defendant intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Drummond's image, likeness and/or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

168.    Defendant had actual or constructive knowledge or consciously disregarded the wrongfulness of its conduct, deprived Drummond of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Drummond.

169.    At a minimum, Defendant's conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Drummond's rights.

170.    Alternatively, Defendant acted negligently towards Drummond in using and disseminating, without authority, her image, likeness and/or identity on Defendant's social

media outlet to promote, advertise and market Defendant's strip club and Defendant's events and activities.

171.    Defendant has caused irreparable harm to Drummond, her reputation and brand by attributing to Drummond the adult entertainment lifestyle and activities at Defendant's strip club.

172.    Defendant has also damaged Drummond as a direct and proximate result of its unauthorized use of Drummond's image, likeness and/or identity without compensating Drummond.

**WHEREFORE**, Drummond respectfully requests that the Court issue a judgment against Defendant for all remedies available under a claim of misappropriation including, but not limited to, actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits and other relief deemed just and proper by this Court.

## DRUMMOND COUNT V
### (Conversion)

173.    Drummond is, and all at relevant times was, the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

174.    Drummond has, and at all times relevant herein had, an intangible property interest in her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

175.    By its acts and conduct alleged above, Defendant has converted Drummond's property rights, including without limitation, Drummond's image, likeness and/or identity for Defendant's use and wrongful disposition for financial gain.

176.     Drummond is informed and believes and on such information alleges that Defendant has refused to return Drummond's property to her or pay for the deprivation of Drummond's property.

177.     As a result, Drummond has suffered compensatory and exemplary damages to be determined according to proof at trial; but Drummond alleges that the same are within the jurisdiction of the Court.

178.     Further, Drummond is informed and believes and thereon alleges that in engaging in the conduct described above, Defendant acted with oppression and/or malice. Defendant's conduct has been despicable and taken in conscious disregard of Drummond's rights.

**WHEREFORE**, Drummond respectfully requests this Court to issue a judgment against Defendant and for all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, and restitution of Defendant's unlawful proceeds, including Defendant's profits, and/or other relief deemed just and proper.

## <u>DRUMMOND COUNT VI</u>
### (Unjust Enrichment)

179.     Drummond has conferred a benefit upon Defendant by virtue of Defendant's usage of her image without compensation.

180.     At all times relevant to this action, Drummond was and is the exclusive owner of all rights, title, and interest to her image, likeness and/or identity unlawfully converted by Defendant for Defendant's benefit.

181.     Defendant was aware that Drummond's image, likeness and/or identity were valuable.

182.    Defendant was aware of the resulting benefit from usage of Drummond's image, likeness and/or identity.

183.    Defendant has retained profits and other benefits conferred upon it by using Drummond's image, likeness and/or identity to promote and advertise Defendant's business and/or Defendant's events and activities.

184.    It would be inequitable for Defendant to retain the benefits conferred upon it by using Drummond's image, likeness and/or identity without paying fair value for the image.

**WHEREFORE**, Drummond respectfully requests that the Court issue a judgment against Defendant for damages, including but not limited to actual damages, costs, interest, imposition of a constructive trust, restitution of unlawful proceeds, including Defendant's gross profits and such other and further relief in law or equity as this Court deems just and proper.

## **PRAYER FOR RELIEF**

**WHEREFORE**, each Plaintiff individually respectfully prays that this Court grant Judgment to each Plaintiff, respectively, and against Defendant, jointly and severally in an amount to be determined at trial aggregated across all Plaintiffs and as follows:

1.    For damages as provided in 15 U.S.C. § 1125(a);

2.    For attorneys' fees and costs of suit, as provided for in 15 U.S.C. § 1125(a);

3.    For damages as provided in Fla. Stat. §540.08;

4.    For general damages according to proof;

5.    For special damages according to proof;

6.    For consequential damages according to proof;

7.     For reasonable attorneys' fees and costs as permitted by law;

8.     For prejudgment interest and royalties at the legal rate;

9.     For such other relief as this Court deems just and proper; and

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury on all issues so triable.

Dated: October 31, 2018.                    Respectfully submitted,

**THE CASAS LAW FIRM, P.C.**

By:  */s/ Ludmila Khomiak*
Ludmila Khomiak, Esq.
Florida Bar No.: 91757
mila@casaslawfirm.com
Brickell Bayview Center
80 S. W. 8th Street, Suite 2000
Miami, FL 33130
Phone: (786) 671-3244
Fax: (786) 671-3243
*Attorney for Plaintiffs*